**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

———————————————————

DEBRA CARTER, et al.

               Plaintiffs,

v.

UNITED STATES OF AMERICA,

               Defendant.

———————————————————

CIVIL ACTION NO.
1:19-cv-02787-ELR

UNITED STATES'
MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS
FOR LACK OF SUBJECT-MATTER
JURISDICTION

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................1

BACKGROUND .....................................................................................2

STANDARD OF REVIEW .......................................................................3

ARGUMENT ..........................................................................................4

   I.   Plaintiffs' Claims Are Barred by North Carolina's Ten-Year Statute of
      Repose.....................................................................................................5

   II.   Plaintiffs' Claims Are Barred by the FTCA's Discretionary Function
      Exception. ...........................................................................................12

           A.  No Provision Specifically Prescribed a Course of Conduct ..............14

           B.  The Challenged Conduct Is Susceptible to Policy Analysis...............19

   III.   Plaintiffs' Claims that are Predicated on Exposure While in Military
       Service at Camp Lejeune are Barred by the *Feres* Doctrine ........................21

CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

*Am. Dental Ass'n v. Cigna Corp.,*
    605 F.3d 1283 (11th Cir. 2010) ...............................................................9, 10

*Aragon v. United States,*
    146 F.3d 819 (10th Cir. 1998) ...............................................................18, 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................9, 10

*Bell v. Dep't of Navy*,
    No. 4:19-CV-002221 AGF,
    2021 WL 1143852 (E.D. Mo. Mar. 25, 2021) ........................................2, 23

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................9, 10

*Berkovitz ex rel. Berkovitz v. United States,*
    486 U.S. 531 (1988) .....................................................................................13

*Brazil v. Janssen Rsch. & Dev. LLC,*
    249 F. Supp. 3d 1321 (N.D. Ga. 2016) .......................................................10

*Bryant v. United States,*
    768 F.3d 1378 (11th Cir. 2014) .....................................................................6

*Carmichael v. Kellogg, Brown & Root Servs., Inc.,*
    572 F.3d 1271 (11th Cir. 2009) .....................................................................4

*Castleberry v. Goldome Credit Corp.*,
    408 F.3d 773 (11th Cir. 2005) .......................................................................3

PAGE

*Cole v. United States,*
    755 F.2d 873 (11th Cir. 1985) ........................................................24

*Cole v. United States,*
    635 F. Supp. 1185 (N.D. Ala. 1986) ..............................................25

*Gaspard v. United States,*
    713 F.2d 1097 (5th Cir. 1983) .......................................................23

*Gros v. United States,*
    No. H-04-4665, 2005 WL 6459834 (S.D. Tex. Sept. 27, 2005),
    *aff'd*, 232 F. App'x 417 (5th Cir. 2007) ......................................23

*Feres v. United States*,
    340 U.S. 135 (1950) ...............................................................1, 22

*Foster Logging, Inc. v. United States,*
    973 F.3d 1152 (11th Cir. 2020) ................................................13, 20

*Hansley, v. Dep't of Navy*,
    No. 7:19-CV-133-FL, 2021 WL 2546716 (E.D.N.C. June 21, 2021) ...........2

*In re Agent Orange Prod. Liab. Litig.,*
    818 F.2d 194 (2d Cir. 1987) .........................................................25

*In re Camp Lejeune N. Carolina Water Contam. Litig.*,
    263 F. Supp. 3d 1318 (N.D. Ga. 2016) ................................ 1, 5, 6, passim

*In re Camp Lejeune N. Carolina Water Contam. Litig.*,
    774 F. App'x 564 (11th Cir. 2019),
    *Cert. denied*, 2020 WL 2814772 (U.S. June 1, 2020) ..............................1, 8

*In re Consol. U.S. Atmos. Testing Litig.,*
    820 F.2d 982 (9th Cir. 1987) ........................................................25

PAGE

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ........................................................................3

*Land v. Dollar*,
    330 U.S. 731 (1947) ....................................................................3, 4

*Maas v. United States*,
    94 F.3d 291 (7th Cir. 1996) ......................................................21, 25

*Minns v. United States*,
    155 F.3d 445 (4th Cir. 1998) ........................................................25

*Monaco v. United States*,
    661 F.2d 129 (9th Cir. 1981) ........................................................23

*Monzon v. United States*,
    253 F.3d 567 (11th Cir. 2001) ......................................................21

*Moore v. Mylan Inc.*,
    840 F. Supp. 2d 1337 (N.D. Ga. 2012) ........................................10

*O'Connell v. Department of the Navy*,
    No. 10-10746, 2010 WL 5572928 (D. Mass. Dec. 21, 2010) ......23

*OSI Inc. v. United States*,
    285 F.3d 947 (11th Cir. 2002) ..........................................14, 18, 20

*Sánchez ex rel. D.R.--S. v. United States*,
    671 F.3d 86 (1st Cir. 2012) ..........................................................21

*Schmidt v. C.R. Bard, Inc.*,
    No. 6:14-CV-62, 2014 WL 5149175 (S.D. Ga. Oct. 14, 2014) ...................10

PAGE

*Slappey v. U.S. Army Corps of Eng'rs,*
        571 F. App'x 855 (11th Cir. 2014)  ...............................................................20

*Starke v. United States,*
        249 F. App'x 774 (11th Cir. 2007) ...............................................................22

*Steel Co. v. Citizens for a Better Env't,*
        523 U.S. 83 (1998). ........................................................................................3

*Tate v. Camp Lejeune,*
        No. 4:19-CV-91-D, 2019 WL 7373699 (E.D. N.C. Dec. 30, 2019) ............23

*United States v. Gaubert,*
        499 U.S. 315 (1991) .................................................................................13, 14

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),*
        467 U.S. 797 (1984) .................................................................................13, 14

*U.S. Aviation Underwriters, Inc. v. United States,*
        562 F.3d 1297 (11th Cir. 2009)  ............................................................20, 21

*Watkins v. United States,*
        462 F. Supp. 980 (S.D. Ga. 1977),
        *aff'd,* 587 F.2d 279 (5th Cir. 1979)  ............................................................22

*Whitley v. United States,*
        170 F.3d 1061 (11th Cir. 1999)  ....................................................................22

PAGE

### STATE CASES

*Christie v. Hartley Constr., Inc.*,
    367 N.C. 534, 766 S.E.2d 283 (2014) ...........................................................5

*Feibus & Co. v. Godley Constr. Co.*
    301 N.C. 294, 271 S.E. 385 (1980) ...............................................................7

*Misenheimer v. Burris*,
    360 N.C. 620, 637 S.E.2d 173 (2006) ...........................................................6

### FEDERAL STATUTES

28 U.S.C. § 1346 ..............................................................................................4, 5

28 U.S.C. § 2674 ..............................................................................................4, 5

28 U.S.C. § 2680 ...............................................................................................13

Pub. L. No. 109–364, § 318, 120 Stat. 2083, 2143–2144 (Oct. 17, 2006) .............18

Pub. L. No. 110–181, § 315, 122 Stat. 3, 56–57 (Jan. 28, 2008) ...........................18

### STATE STATUTES

N.C. Gen. Stat. § 1-50(a)(5) ................................................................ 6, 7, 8, passim

N.C. Gen. Stat. § 1-52 (16) .......................................................................6, 11, 12

## INTRODUCTION

The Court lacks subject-matter jurisdiction over Plaintiffs' action under the Federal Tort Claims Act (FTCA).  This Court, in previously adjudicating claims virtually identical to Plaintiffs' claims here, found the claims barred by a North Carolina ten-year statute of repose, the FTCA's discretionary function exception, and the incident to military service doctrine of *Feres v. United States*, 340 U.S. 135 (1950).  *See In re Camp Lejeune N. Carolina Water Contam. Litig.*, 263 F. Supp. 3d 1318 (N.D. Ga. 2016).  The Eleventh Circuit affirmed this Court's holding regarding application of North Carolina's statute of repose without addressing the other independent grounds for dismissal.  *In re Camp Lejeune N. Carolina Water Contam. Litig.*, 774 F. App'x 564 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2825 (2020).  In their motion to stay this case while the petition for certiorari was pending, Plaintiffs acknowledged that a denial of certiorari would mean that their claims are no longer viable. *See* Dkt. No. 3-1 at 5.  However, rather than dismissing this case after the Supreme Court denied certiorari, Plaintiffs sought to transfer the case to the Eastern District of North Carolina. The Court denied that motion, but Plaintiffs still have not voluntarily dismissed their Complaint.

As shown below, Plaintiffs' claims are barred by the North Carolina statute of repose because Plaintiffs failed to file administrative claims within ten years of

the alleged negligent conduct.  Independently, Plaintiffs' claims are barred the FTCA's discretionary function exception because Plaintiffs' claims challenge discretionary, policy-based conduct.  Finally, several of the Plaintiffs' claims are brought by, or on behalf of, former members of the military who claim injury or death as a result of exposure to Camp Lejeune water; such claims are barred under the *Feres* doctrine because the injury or death was "incident to military service."

## BACKGROUND

Over the past two decades there have been a number of federal lawsuits against the United States, claiming personal injury or death from exposure to contaminated groundwater at Camp Lejeune.  The United States described the long procedural history of the Camp Lejeune litigation in its response to Plaintiffs' motion to transfer this case.  See Dkt. No. 25 at 2-10.  Since the time of that motion, several additional cases have been dismissed.  *See*, *e.g., Bell v. Dep't of Navy* , No. 4:19-CV-002221 AGF, 2021 WL 1143852 (E.D. Mo. Mar. 25, 2021);  *Hansley, v. Dep't of Navy*, No. 7:19-CV-133-FL, 2021 WL 2546716 (E.D.N.C. June 21, 2021), Currently, aside from this case, there are only two other district court cases in litigation, both of which are at the motions stage.

Plaintiffs in this case seek to bring a class action on behalf of all claimants who had filed, or will file, FTCA administrative tort claims with the Navy regarding

the Camp Lejeune drinking water contamination.  Dkt. No. 1 ¶ 48.  Plaintiffs invoke the Court's jurisdiction through the FTCA, *id.*  ¶ 1, and claim that the United States was negligent in: disposal hazardous waste; design and construction of the Camp Lejeune water supply system; maintenance of the system; monitoring water quality; and failure to warn of contamination and health hazards.  *See id.* ¶¶ 13, 20, 24, 25, 27, 36, 43, 44.

## STANDARD OF REVIEW

The United States moves to dismiss the Plaintiffs' claims for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Because federal courts are courts of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Moreover, jurisdiction is a threshold issue because it is "a prerequisite to the legitimate exercise of judicial power"; therefore, the separation of powers doctrine requires a federal court to determine whether it has jurisdiction at the outset rather than defer the issue until trial.  *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779 (11th Cir. 2005); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

On a Rule 12(b)(1) motion to dismiss, a court is not limited to the allegations of the complaint, but may consider materials outside of the pleadings.  *See Land v.*

*Dollar*, 330 U.S. 731, 735 n.4 (1947); (court "may inquire by affidavits or otherwise, into the facts as they exist"); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (on a factual attack on subject-matter jurisdiction, court may consider "evidence such as deposition testimony and affidavits").

## ARGUMENT

Plaintiffs cannot meet their burden of showing a waiver of sovereign immunity under the FTCA to invoke the subject-matter jurisdiction of this Court. First, Plaintiffs cannot show that their action lies within the FTCA's statutory grant of jurisdiction in 28 U.S.C. § 1346(b)(1). This grant provides a limited waiver of immunity authorizing damage actions for injuries caused by negligent or wrongful conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law. *See* 28 U.S.C. §§ 1346(b)(1), 2674. Here, plaintiffs cannot show that there is any analogous private liability under state law, because an action against a private party for the alleged negligent conduct would be barred by North Carolina's ten-year statute of repose.

Additionally, Plaintiffs cannot show that their claims fall outside two exceptions to the FTCA's waiver of sovereign immunity, namely, the discretionary function exception, which excludes claims challenging the government's discretionary, policy-based conduct, and the *Feres* doctrine, which excludes claims

that arise incident to military service.

## I.   Plaintiffs' Claims Are Barred by North Carolina's Ten-Year Statute of Repose.

Under the FTCA, Plaintiffs' claims are governed by the substantive law of the state where the alleged negligence occurred, which, here, is North Carolina.  *See* 28 U.S.C. § 1346(b)(1) (liability under FTCA to be determined "in accordance with the law of the place where the act or omission occurred").  Under North Carolina law, a statute of repose is considered substantive law and therefore is part of the "law of the place" of North Carolina.  *In re Camp Lejeune*, 263 F. Supp. 3d at 1332 (citing *Christie v. Hartley Constr., Inc.*, 367 N.C. 534, 766 S.E.2d 283 (2014)).  The FTCA incorporates this substantive provision of state law to limit the Court's jurisdiction because the FTCA waives sovereign immunity only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

Here, Plaintiffs' claims barred because they were not filed within ten years of the United States' last alleged negligent act or omission.   The applicable North Carolina limitations provision stated:

> (16) Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c)[regarding malpractice], shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Except as provided in G.S. 130A-26.3 or G.S. 1-17(d) and (e), *no cause of action shall accrue more*

*than 10 years from the last act or omission of the defendant giving rise to the cause of action.*

N.C. GEN. STAT. § 1-52(16) (emphasis added).[1]  The provision established a ten-year statute of repose that operates to foreclose actions independently of the operation of discovery rule of accrual for the statute of limitations.  *See Misenheimer v. Burris*, 360 N.C. 620, 637 S.E.2d 173, 175–76 (2006).

In the *Camp Lejeune MDL*, the Court found that all of the Camp Lejeune claims were barred by the ten-year statute of repose because the contaminated Camp Lejeune wells were taken out of service by 1987 and the earliest claim was not filed until more than ten years later in 1999.  263 F. Supp. 3d at 1339.  Here the earliest claim was filed in 2010 (*see* Exh. 1 Administrative Claims showing dates of submission), well after the statute of repose period had expired.

Plaintiffs allege that a different North Carolina statute of repose – a six-year statute of repose related to real property, N.C. Gen. Stat. § 1-50(a)(5) – is the only statute of repose applicable to their claims.  Dkt. No. 1 ¶ 47.  Presumably because

---

[1]  The North Carolina Legislature amended the statute of repose of § 1-52(16) in 2014 to exclude claims based on groundwater contamination, which is the section's reference to "G.S. 130A-26.3."  In *Bryant v. United States*, 768 F.3d 1378 (11th Cir. 2014), an interlocutory appeal arising out of the *Camp Lejeune MDL*, the Eleventh Circuit held that the amendment could not retroactively affect application of the North Carolina statute of repose to the Camp Lejeune claims.  *Id.* at 1381-85.  Here, Plaintiffs' claims were all barred by the time of the Legislature's 2014 amendment.

an exception to the use of this statute of repose applies by virtue of the United States'
alleged concealment of its conduct that caused the contamination and Plaintiffs'
exposure, *see id.* ¶ 41,[2] Plaintiffs allege that this statute of repose "is no bar to the
claims set out in this Complaint."   *Id.* ¶ 47.   But the Camp Lejeune MDL Court
already rejected the same argument.   The Court reviewed the North Carolina case
law and concluded that § 1-50(a)(5) "was meant to address the liability of architects,
designers, and contractors."   263 F. Supp. 3d at 1337.   The Court quoted a decision
of the North Carolina Supreme Court on the application of § 1-50(a)(5):

> In order for this statute to apply, three circumstances must exist: (1) the
> action must be for recovery of damages to real or personal property, (2)
> the damages must arise out of the defective and unsafe condition of an
> improvement to real property, and (3) the party sued must have been
> involved in the designing, planning, or construction of the defective or
> unsafe improvement.

*Id.* at 1338 (citing *Feibus & Co. v. Godley Constr. Co*. 301 N.C. 294, 271 S.E. 385,

391 (1980)). The Court then concluded that this statute of repose did not apply to the

Camp Lejeune plaintiffs' claims.

> [T]here is no contention that the design or construction of the water
> treatment plants or wells was defective such that it caused
> the contamination of the water. Rather, the Plaintiffs clearly assert that
> the Government itself, or individuals permitted by the Government to
> be on the property, dumped chemicals into the ground such that the

---

[2] The design and construction statute of repose provides that it may not be asserted
by a property owner who conceals a defective condition or has committed fraud or
willful and wanton negligence.  *See* N.C. GEN. STAT. § 1-50(a)(5) (d) & (e).

water table became contaminated. It is the dumping and the failure to monitor water quality, the Plaintiffs contend, that caused the contamination, not any malfunction with the water treatment and delivery system. There is no contention that the water treatment system failed to operate as designed. Based on these allegations, the court finds that section 1–50(a)(5) does not apply because the issue here is not one of a "defective or unsafe condition of an improvement to real property."

On appeal, the Eleventh Circuit likewise rejected the contention that § 1-50(a)(5) applied to any of plaintiffs' claims:

Plaintiffs were required to allege defects in the design or construction of the wells at Camp Lejeune . . . The closest [a plaintiff] comes to alleging a construction defect is when [Plaintiff Rivera] claims that over-pumping of the base's water wells, in addition to deficient maintenance and inspection, caused the wells to become "defective and unsafe." . . . But this is conduct that allegedly occurred *after* the construction of the wells, and thus cannot support a claim that the wells were defectively designed or constructed.

774 F. Appx. at 567-68.

Here, Plaintiffs' few conclusory allegations regarding design and construction – read on their own or in the context of the entire Complaint – are insufficient to invoke the statute of repose in § 1-50(a)(5).  Plaintiffs allege  "Defendants failed to non-negligently construct the water wells and water supply and distribution system at Camp Lejeune so as to eliminate or prevent contamination or pollution of the water supplied."  Dkt. No. 1 ¶ 13.  Plaintiffs also allege "Defendant defectively planned, designed and constructed the water wells at Camp Lejeune."  *Id.* ¶ 42.

These two conclusory allegations are sprinkled among many other allegations focused on the United States' conduct in:  disposing of hazardous materials at Camp Lejeune, maintaining the water supply system at Camp Lejeune, monitoring water quality at Camp Lejeune, and failing to provide information about the contamination.  Significantly, there are no allegations regarding *how* the water supply system at Camp Lejeune was defectively constructed or designed, *how* such defects resulted in the contamination of the water supply and caused Plaintiffs' injuries, or *how* the United States fraudulently concealed any defective condition.

Plaintiffs' conclusory allegations regarding alleged defective design and construction do not meet the pleading standards of Fed. R. Civ. P. 8(a)(2), as articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and, thus, the allegations are insufficient to invoke the statute of repose in § 1-50(a)(5).  A pleading "requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). In evaluating a complaint a Court must "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief.'" 605 F.3d at 1290 (quoting *Iqbal*, 5556 U.S. at 679).

In a case alleging defective design and construction, a plaintiff must plead a *specific* design or construction defect and allege *how* that defect *caused* the plaintiff's injury. This Court has dismissed claims pursuant to *Twombly* and *Iqbal* where a plaintiff's complaint has failed to include such allegations. For example, in *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1336-38 (N.D. Ga. 2016), this Court held that a plaintiff had not sufficiently pled a product liability action based on the defective design or manufacture of a drug. The Court found the plaintiff's allegations were insufficient under *Twombly* and *Iqbal* because plaintiff had not alleged "any specific design or manufacturing defect" or pled any facts connecting plaintiff's injury "to any design or manufacturing defect." *See also Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1344 (N.D. Ga. 2012) (finding allegations insufficient where plaintiff had "not alleged any specific design or manufacturing defect."); *Schmidt v. C.R. Bard, Inc.*, No. 6:14-CV-62, 2014 WL 5149175, at *4 (S.D. Ga. Oct. 14, 2014) (stating that the Federal Rules require "an allegation of specific design defects from which the Court can draw a reasonable inference that at least one of the defects caused Plaintiffs injuries").

Plaintiffs' Complaint fails to allege any specific design or manufacturing defect with the Camp Lejeune water supply system.  Plaintiffs only generally allege that the United States failed to non-negligently construct the water wells and water supply and distribution system at Camp Lejeune so as to eliminate or prevent contamination or pollution of the water supplied.  Dkt. No. 1 ¶ 13.  This is insufficient to allege a specific design or construction defect or to allege a connection between a specific defect and any Plaintiff's injury.  Rather, such general allegations are clearly an unsupported attempt to invoke the statue of repose of § 1-50(a)(5) to avoid the bar of § 1-52(16).  The Court should reject this attempt based on the insufficiency of Plaintiffs' pleading.[3]

Plaintiffs also allege in their Complaint that North Carolina law should not apply to "failure to warn or wrongful death . . . where the tort occurred outside of North Carolina."  Dkt No. 1 ¶ 47.  However, in the *Camp Lejeune MDL*, this Court stated:

> The "law of the place where the act or omission occurred" means "the whole law of the State where the act or omission occurred," including the choice of law rules of that state. "The plaintiff's injury is considered to be sustained in the state 'where the last act occurred giving rise to [the] injury.'" Here, there can be no dispute but that the place is North Carolina, the state in which all of the Plaintiffs resided at the time they

---

[3] To invoke an exception to the statute of repose of § 1-50(a)(5), Plaintiffs must allege with particularity fraud or concealment under the pleading standards of Fed. R. Civ. P. 9(b); Plaintiffs' Complaint fails to include such particular allegations.

allege they were exposed to a contaminated water supply at Camp Lejeune. All actions with respect to the water supply at Camp Lejeune took place in North Carolina. North Carolina applies the traditional *lex loci delicti* rule in tort cases. Significantly, under North Carolina law, a statute of repose is considered substantive law and therefore is also part of the "law of the place" of North Carolina.

263 F. Supp. 3d at 1332 (citations omitted).  The *Camp Lejeune MDL* included several out-of-state plaintiffs, including Erica Bryant, a resident of Georgia, who filed a claim for the wrongful death of her spouse Alonzo Bryant, Sr., (several of Mr. Bryant's children seek to assert similar claims in this action).  Nevertheless, in the *Camp Lejeune MDL*, this Court found that allegations of continuing negligent conduct, such as a failure to notify residents of contamination, did not change application of the statute of repose.  *Id.* at 1339-40.  The Court reasoned that the statue of repose was intended to be an "absolute bar," and any failure to warn claim arising from subsequent circumstances could not change the application of the statute to bar the suit.  *Id.* at 1340.  Because all of the claims arise out of an alleged exposure to contaminated water in North Carolina and all claims were filed more than ten years after the contaminated wells were closed, § 1-52(16) bars the claims.

## II.   Plaintiffs' Claims Are Barred by the FTCA's Discretionary Function Exception.

Independently of the statute of repose, Plaintiffs' claims are barred by the FTCA's discretionary function exception.  Under the discretionary function

exception, the FTCA does not waive sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has set out a two-part test for determining whether a claim is barred by the discretionary-function exception. First, the court "examines the nature of the challenged conduct" to determine whether it is "'discretionary in nature,'" in that it involves "'an element of judgment or choice.'" *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).  A mandatory provision that removes discretion is one that "specifically prescribes a course of action for an employee to follow," leaving "the employee . . . no rightful option but to adhere to the directive." *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, if the challenged act or omission is not governed by a mandatory directive, the court must determine whether it involves the kind of judgment "that the discretionary function exception was designed to shield." *Id.*  The exception was designed to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)

(internal quotations omitted).  The judgments that are protected are those that are "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.  Plaintiffs bear the burden of showing that the discretionary function exception does not to apply to their claims. *OSI Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

The Plaintiffs allege that the United States was negligent in (1) disposal of contaminants and hazardous materials that may contaminate drinking water at Camp Lejeune; (2) designing and constructing the Camp Lejeune water supply system, (3) maintaining the Camp Lejeune water supply system, (4) monitoring water quality at Camp Lejeune, and (5) failing to provide information about the contamination.  As we show below, these claims are barred because they implicate discretionary, policy-based conduct. *See* Dkt. No. 1 ¶¶ 13, 20, 24, 25, 27, 36, 43, 44.

## A. No Provision Specifically Prescribed a Course of Conduct.

Plaintiffs have not, and cannot, meet the first criterion of the discretionary function exception test because they cannot point to any mandatory language that prescribes a specific course of conduct relevant to their claims.  In their Complaint, Plaintiffs allege that the following documents included provisions relevant to their claims: (1) the Navy's Bureau of Medicine and Surgery Instructions 6240.3B & 6240.3C ("BUMEDs") (Ex. 2, Ex. 3), (2) unidentified Base Orders, (3) and EPA Suggested No Adverse Response Level reports issued in 1979 and 1980 (SNARLs)

(Ex. 4, Ex. 5).  Dkt. No. 1 ¶¶ 10-12, 14-19, 29-31.

In the *Camp Lejeune MDL*, this Court thoroughly considered the BUMEDs, an identified Base Order, and the SNARLs, and found that none of them included a specific and mandatory provision relevant to: (1) the disposal of hazardous waste at Camp Lejeune, (2) maintaining the water supply system at Camp Lejeune, or (3) monitoring Camp Lejeune water quality.  *See* 263 F. Supp. 3d at 1343-44, 1347-51. The Court found that the BUMEDs, regarding base water supplies, contained some mandatory language, but did not contain "specific mandatory instructions for how to achieve a clean water supply that removed any discretion from the part of those responsible for the water supply at Camp Lejeune." *Id.* at 1351.  The Court noted that "[t]he question is not whether Camp Lejeune was under a directive to provide a clean water supply; the question is whether those responsible for the required clean water supply had any discretion in the manner in which that supply was to be achieved." *Id.* at 1350.

With respect to waste disposal, the plaintiffs in the *Camp Lejeune MDL* cited Base Order 5100.13B (Ex. 6), and the Court stated that the Order did "not specify any particular contaminants and gave base officials discretion to determine whether an item is salable or serviceable and where it should be disposed;" the Court concluded that there were "no mandatory or specific methods of disposal required

in the Base Order." *Id.* at 1351.  Plaintiffs have not cited a specific Base Order in their Complaint, but rather allege that unidentified Base Orders required the United States to "to take steps to avoid improperly [sic] practices of disposal."  Dkt. No. 1 ¶ 19.  This does not meet their burden of showing a specific and mandatory directive.

Finally, with respect to the SNARLs, in the *Camp Lejeune MDL*, this Court found that the SNARLS did not establish any specific and mandatory requirements regarding concentrations of contaminants allowable in the Camp Lejeune water supply.  The Court stated that "[t]o the extent any individual Plaintiff would rely on the SNARLs . . . as the name indicates, such levels were only 'suggested' and therefore could not form the basis of any specific mandatory direction to base officials." *Id.* at 1349 n. 150.  As the Court noted, the contaminants at issue at Camp Lejeune, benzene, trichloroethylene (TCE), vinyl chloride, tetrachloroethylene (PCE), and dichloroethene (DCE), were not regulated under the Safe Drinking Water Act until after the contaminated Camp Lejeune wells had been taken out of service by 1987. *Id.* at 1348.  The Court remarked that "[i]t was not until 1989 that the EPA issued final regulations [under the Safe Drinking Water Act] for enforceable maximum contamination levels for benzene, TCE, and vinyl chloride;" and "final levels for DCE and PCE were not effective until 1992." *Id.* (citing Ex. 7 & 8).

In their Complaint, Plaintiffs seek to allege that the BUMEDs established a

requirement that the Court did not directly address in the *Camp Lejeune MDL*, namely that the water supply system had to be "designed and constructed to eliminate or prevent contamination and pollution." *See* Dkt. No. 1 ¶¶ 12-15. While this language is contained in the BUMEDs, the provision from which the language is drawn shows the discretion that the United States retained; moreover, there are no specific requirements included in the BUMEDs regarding *how* a water supply system must be designed or constructed to eliminate or prevent contamination and pollution. The provision states:

> Adequate protection by treatment means any one or any combination of the controlled processes of coagulation, sedimentation, absorption, filtration, disinfection or other processes which produce a water consistently meeting the requirements of these standards. This protection also includes processes which are appropriate to the source of supply; works which are of adequate capacity to meet maximum demands without creating health hazards, and which are located, designed, and constructed to eliminate or prevent pollution; and conscientious operation by well trained and competent personnel whose qualifications are commensurate with the responsibilities of the position.

Ex. 2 at 4.b.; Ex. 3 at 4.b

This provision allows discretion in determining which of several treatments, processes, designs and constructions are appropriate and adequate for the water supply system. A goal that the system "eliminate or prevent pollution" cannot establish a specific and mandatory requirement regarding how that is accomplished.

Indeed, the Court in the *Camp Lejeune MDL*, in addressing the BUMEDS as a whole, including the language regarding design and construction, relied on the Eleventh Circuit's conclusion in *OSI Inc., v. United States,* that objectives and principles do not create mandatory directives that overcome the discretionary function exception. *See* 263 F. Supp. 3d 1348-51(citing *OSI Inc.*, 285 F.3d at 951-52). *See also Aragon v. United States*, 146 F.3d 819, 825-26 (10th Cir. 1998) (finding that a pollution prevention provision suggested "principles rather than practices," and stating that "[a]n objective, alone, does not equate to a specific, mandatory directive").

Plaintiffs do not cite any provisions in their Complaint regarding notification to residents of contamination. As this Court stated in the *Camp Lejeune MDL*:

> The first specific notification provisions regarding Camp Lejeune appeared in legislation in 2006 and 2008. In 2006, Congress mandated that the Government "take appropriate action" to locate and inform former military personnel and residents of the contamination of the water supply after the completion of the study by the Agency for Toxic Substances and Disease Registry ("ATSDR") on the relationship of childhood cancers and birth defects to the contaminated drinking water at Camp Lejeune. The 2008 Act requires the Secretary of the Navy to "make reasonable efforts to identify and notify directly individuals who were served by the Tarawa Terrace Water Distribution System."

263 F. Supp. 3d at 1352-53.[4]   The Court concluded that neither of the statutes

---

[4] Citing Pub. L. No. 109–364, § 318, 120 Stat. 2083, 2143–2144 (Oct. 17, 2006) and Pub. L. No. 110–181, § 315, 122 Stat. 3, 56–57 (Jan. 28, 2008).

provided specific and mandatory procedures on notification and that such decisions were still within the discretion of the Government.  *Id.* at 1353.  Plaintiffs cannot point to any notification requirements since that time.  Consequently, Plaintiffs cannot show a specific and mandatory requirement for any of their claims.

### B. The Challenged Conduct Is Susceptible to Policy Analysis.

Under the second criterion of the discretionary function exception test, Plaintiffs cannot show that the conduct they are challenging is devoid of protected policy implications.  As this Court found in the *Camp Lejeune MDL*, a determination of how to supply drinking water to a large military base involves a range of policy considerations, including "providing adequate water supply to the base, maintaining military readiness, prioritizing military obligations with limited financial resources, addressing drinking water standards for those substances actually regulated, and working within" the requirements set out by the Department of Defense and the Navy.  *Id.* at 1354.  Moreover, the Court found that the direction of resources to the disposal of hazardous waste and provision of clean water on a military base involved the kind of balancing of national security and economic policies that should be protected by the discretionary function exception.  *Id.*  For these reasons, Plaintiffs' negligence allegations here are susceptible to policy analysis, and they have failed to "allege a plausible claim that falls outside the discretionary function exception."

*See Foster Logging, Inc.,* 973 F.3d at 1159 (citations omitted).

In *OSI Inc.*, the Eleventh Circuit also recognized the policy considerations inherent in taking steps to water quality on a military base. This Court held that "[d]isposal of waste on a military base 'involve[s] policy choices of the most basic kind,' " because "[t]he nature of the military's function requires that it be free to weigh environmental policies against security and military concerns." 285 F.3d at 953 (second alteration in original) (quoting *Aragon*, 146 F.3d at 826). The Eleventh Circuit, thus, concluded that decisions related to waste disposal and a restoration plan for contaminated groundwater "reflect the kind of judgment that the discretionary function exception is designed to shield." 825 F.3d at 953. Here, similarly, determinations about how to maintain a safe water supply reflect the kind of policy-based judgment shielded by the discretionary function exception.

With respect to Plaintiffs' failure to warn claims, this Court, in the *Camp Lejeune MDL* held that "it is clear that decisions whether to warn are full of implications for policy concerns." 263 F. Supp. 3d at 1355. Indeed, the Eleventh Circuit has "repeatedly held that an agency's decision whether to warn, and how to warn, implicates policy concerns for purposes of the discretionary function analysis." *Slappey v. U.S. Army Corps of Eng'rs*, 571 F. App'x 855, 860 (11th Cir. 2014) (per curiam) (citing *U.S. Aviation Underwriters, Inc. v. United States*, 562

F.3d 1297, 1300 (11th Cir. 2009) (per curiam); *Monzon v. United States*, 253 F.3d 567, 572 (11th Cir. 2001)). The Eleventh Circuit's decisions align with "[n]umerous cases in [other] courts of appeals" that "hold that the government's decision whether to warn about the presence of toxins, carcinogens, or poisons falls under the discretionary function exception to the FTCA's waiver of sovereign immunity." *Sánchez ex rel. D.R.--S. v. United States*, 671 F.3d 86, 101 (1st Cir. 2012). Such cases involve questions of what resources should be devoted to warning, how much exposure should trigger a warning, and whether the benefits of warning outweigh the harms. *See, e.g.*, *Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996) (discussing policies associated with decisions about providing warning).

In sum, Plaintiffs cannot show either (1) that a mandatory and specific provision circumscribed the government's discretion or (2) that the challenged conduct is not susceptible to policy analysis. Consequently, Plaintiffs' claims are barred by the FTCA's discretionary function exception.

## III. Plaintiffs' Claims that are Predicated on Exposure While in Military Service at Camp Lejeune are Barred by the *Feres* Doctrine.

Independently of the North Carolina statute of repose and the FTCA's discretionary function exception, the *Feres* doctrine precludes any claims predicated on service members' exposure at Camp Lejeune. Here, several of the Plaintiffs' claims are predicated on exposure to contaminated water during military service at

Camp Lejeune, including the wrongful death claims of the Bryant children, Michele Hennsey, and the Estate of Bill Thompson, as well as the personal injury claims of Frenanza Favors, Robert Mashburn, Jr., Amena Mitchell, and Mark M. Shelor. (Ex. 1 at 1, 13, 76, 83, 115, 121, 159).

In *Feres v. United States*, 340 U.S. 135 (1950), the Supreme Court held that injuries to service members that are incident to their military service fall outside the statutory waiver of sovereign immunity in the FTCA. *Id.* at 141-42. This Court in the *Camp Lejeune MDL* found that the *Feres* doctrine barred claims in the MDL that were predicated on a military service member's exposure to contaminated water at Camp Lejeune. 263 F. Supp. 3d at 1341-43. The Court considered the three factors that the Eleventh Circuit had articulated for application of the *Feres* doctrine: "(1) duty status, (2) location, and (3) activity." *Id.* at 1341(quoting *Whitley v. United States*, 170 F.3d 1061, 1070 (11th Cir. 1999)). Regarding the first two factors, "[w]here the claimant is injured on base while on 'active duty,' *Feres* applies virtually as a matter of law." *Watkins v. United States*, 462 F. Supp. 980, 986 (S.D. Ga. 1977), *aff'd*, 587 F.2d 279, 279 (5th Cir. 1979) (per curiam) (adopting district court's reasoning); *see Starke v. United States*, 249 F. App'x 774, 775 (11th Cir. 2007) (per curiam) (relying on *Watkins*).

The Court in the *Camp Lejeune MDL* concluded that "for at least part of their

time in service Plaintiff military service members were on active duty at Camp Lejeune." 263 F. Supp. 3d at 1341. Thus, the Court concluded, "it is clear that the claims of those service members that accrued while they were on active duty are barred by the *Feres* doctrine." *Id.* Further, given the policies underlying *Feres*, the Court rejected "the Plaintiffs' argument that if the service member was not on active duty for every single day of his time as a service member then *Feres* cannot apply." *Id.* at 1342. Other courts have also found claims based on service members' exposure to contaminated water at Camp Lejeune to be barred by the *Feres* doctrine. *See*, *e.g.*, *Gros v. United States*, 232 F. App'x 417, 418-19 (5th Cir. 2007), *aff'g Gros v. United States*, No. H-04-4665, 2005 WL 6459834 (S.D. Tex. Sept. 27, 2005); *O'Connell v. Department of the Navy*, No. 10-10746, 2010 WL 5572928, *2-4 (D. Mass. Dec. 21, 2010); *Tate v. Camp Lejeune*, No. 4:19-CV-91-D, 2019 WL 7373699, *1-2 (E.D. N.C. Dec. 30, 2019); *Bell v. Dep't of Navy* , No. 4:19-CV-002221 AGF, 2021 WL 1143852, *2 (E.D. Mo. Mar. 25, 2021).

The *Feres* doctrine bars claims for latent injuries from harmful exposures, even in circumstances where the injuries did not manifest themselves until after the service member's discharge, as long as the exposures occurred while the service member was on active duty. *See Gaspard v. United States*, 713 F.2d 1097, 1099-1100 (5th Cir. 1983); *Monaco v. United States*, 661 F.2d 129, 132-33 (9th Cir. 1981).

Further, the *Feres* doctrine bars failure to warn claims where any alleged failure to warn of hazards occurred, at least in part, during a veteran's time in the service. *See Cole v. United States*, 755 F.2d 873 (11th Cir. 1985). Under those circumstances, an allegation that the government knew or should have known of risks but failed to warn the veteran during his lifetime is barred by the *Feres* doctrine. *Id.* at 875-76 (citing cases). A failure to warn claim might survive the *Feres* bar only when the alleged conduct causing the injury occurred entirely after the plaintiff left the service giving rise to a completely new duty to warn. *Id*. at 877-79.

Here, Plaintiffs have not specifically alleged that the United States obtained significant additional knowledge regarding hazards after the plaintiff's discharge that gives rise to a completely new, independent duty to warn. Rather, Plaintiffs generally allege that "[o]ver the years since 1985, the U.S. obtained a great deal of material new information about the Camp Lejeune toxic exposures, such as the identity and concentrations of the contaminating chemicals, and the risks" of injury or death. Dkt. No. 1 at 3. This is in contrast to *Cole*, where plaintiff specifically alleged that the "Defendant's knowledge of the harmful effects of radiation exposure expanded greatly [after plaintiff's discharge] to the point where a new duty to treat or warn the Decedent of the hazards of radiation arose," 755 F.2d at 875 n.4, and also alleged a distinct injury from the alleged post-discharge negligence, namely,

aggravation of his radiation-induced condition.  *Id.* at 877.

Even if Plaintiffs had made such a sufficiently specific allegation of a post-discharge failure to warn, such a claim would be barred by the FTCA's discretionary function exception for the reasons described above.  Indeed, courts have consistently found that claims alleging a post-discharge failure to warn of hazards that service members encountered while in the military are barred by the discretionary function exception.  *See*, *e.g.*, *Maas*, 94 F.3d at 295-98 (alleged post-discharge failure to warn of radiation exposure hazards); *In re Consol. U.S. Atmos. Testing Litig.*, 820 F.2d 982, 997-99 (9th Cir. 1987) (alleged post-discharge failure to warn of radiation exposure hazards); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 194, 200-01 (2d Cir. 1987) (alleged post-discharge failure to warn of Agent Orange exposure); *Cole v. United States*, 635 F. Supp. 1185, 1190-91 (N.D. Ala. 1986) (alleged post-discharge failure to warn of radiation exposure hazards).  *See also Minns v. United States*, 155 F.3d 445, 452 (4th Cir. 1998) (alleged failure to warn soldiers and their families of potential effects of inoculations and pesticides falls within the "core of the discretionary function exception").

## CONCLUSION

For all of the foregoing reasons, the Court should grant the motion and dismiss the case.

Respectfully submitted this 1st day of July 2021.

KURT R. ERSKINE
Acting United States Attorney

DARCY COTY
Assistant United States Attorney

J. PATRICK GLYNN
Director, Torts Branch
Environmental Tort Litigation Section

BRIDGET BAILEY LIPSCOMB
Assistant Director, Torts Branch
Environmental Tort Litigation Section

GEOFFREY COOK
ALBERT LAI
LACRESHA JOHNSON
HAROON ANWAR
Trial Attorneys, Torts Branch
Environmental Torts Section


*/s/ Adam Bain* _
ADAM BAIN
Senior Trial Counsel, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail:  adam.bain@usdoj.gov
Telephone:  (202) 616-4209
Fax:  (202) 616-4473

## <u>CERTIFICATION UNDER L.R. 7.1D</u>

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned counsel hereby certifies that the above and foregoing pleading is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

So certified this 1st of July 2021.

*/s/ Adam Bain*

_____
Adam Bain – IN Bar #11134-49
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Torts Branch
Environmental Torts Section
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
Email:  adam.bain@usdoj.gov
Tel: (202) 616-4209
Fax: (202) 616-4473

Attorney for Defendant United States

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a caused the following to be served on all counsel of record through the Court's Electronic Case Filing (ECF) system.

So certified this 1st day of July 2021.

*/s/ Adam Bain*

_____
Adam Bain – IN Bar #11134-49
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Torts Branch
Environmental Torts Section
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
Email:  adam.bain@usdoj.gov
Tel: (202) 616-4209
Fax: (202) 616-4473

Attorney for Defendant United States