## EXHIBIT A

**755 F.2d 873 (1985)**

1.   Christy COLE, Individually and as Personal Representative of the Estate of Robert E. Cole, Deceased; and Helen Cole, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.

No. 84-7113.

**United States Court of Appeals, Eleventh Circuit.**

March 20, 1985.

874*874 Jerry Shirley, Northport, Ala., for plaintiffs-appellants.

Patrick O. Cavanaugh, Paul F. Figley, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before RONEY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Christy and Helen Cole appeal from an order of the United States District Court for the Northern District of Alabama denying their motions to amend and dismissing their complaint against the United States for lack of subject matter jurisdiction. We affirm in part, reverse in part, and remand.

Around 1946 and while a member of the United States Navy, Robert E. Cole was assigned maintenance duty on at least one submarine which had been used as a test vessel during the Bikini Atoll atomic bomb tests. He was subsequently discharged[1] and on November 15, 1981, was diagnosed as having cancer. He died on May 18, 1982.

875*875 After exhausting their administrative remedies, his daughter and personal representative, Christy Cole, and his widow, Helen Cole ("the plaintiffs"), sued the United States under the Federal Tort Claims Act (FTCA or Act), 28 U.S.C. §§ 1346, 2671-2680, for damages.[2] The original complaint alleged that the government knew or should have known of the danger from exposure to radiation but failed to warn Cole during his lifetime.[3] After the government filed a motion to dismiss, the plaintiffs twice moved to amend their complaint. The first proposed amendment sought to add a count alleging that the government failed to apprise Cole of the hazards of radiation exposure after he was discharged even though at that time its knowledge of the harmful effects of such exposure had expanded to the point where there arose a new duty to warn of the danger.[4] The

district court, relying on Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny, granted the government's motion to dismiss and denied the plaintiffs' motions to amend, concluding that the petition, even as amended, would deprive the court of subject matter jurisdiction.

The FTCA is a limited waiver of the common law sovereign immunity of the United States. The Act provides that the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and vests in the district courts exclusive jurisdiction over civil actions against the United States predicated on the purported negligence of government employees "where the United States, if a private person, would be liable to the claimant [under] the law of the place where the act or omission occurred." *Id.* § 1346(b). The Act excludes, however, "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." *Id.* § 2680(j). Although the language of the FTCA does not establish a general prohibition of actions by servicemen or veterans involving injuries incurred "incident to" their military service, the Supreme Court, beginning with the touchstone case of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), has interpreted the Act as barring such suits.[5]

The Supreme Court has not yet had the occasion to address the situation where a veteran charges a negligent failure by the government to warn of a hazard to which 876*876 he was exposed while in the service. The courts of appeals, however, have universally applied the *Feres* doctrine to bar such suits in which the duty to warn originated when the injured serviceman was in the armed forces and merely continued after discharge. *See, e.g.,* Heilman v. United States, 731 F.2d 1104 (3d Cir.1984); Gaspard v. United States, 713 F.2d 1097 (5th Cir.1983), *cert. denied,* ___ U.S. ___, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); Lombard v. United States, 690 F.2d 215 (D.C.Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983); Laswell v. Brown, 683 F.2d 261 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983).

This "continuing tort" theory was also rejected in Stanley v. Central Intelligence Agency, 639 F.2d 1146 (5th Cir. Unit B 1981).[6] In *Stanley,* a veteran alleged in part negligence by the government in failing to monitor and warn him of the harmful effects of LSD which had been administered to him during an Army chemical warfare study. In holding that *Feres* precluded the claim, the court reasoned that any negligent failure to warn "occurred at least in part during his time as a serviceman." *Id.* at 1154. Here, the plaintiffs' original complaint states a claim virtually identical to that in *Stanley,* namely that the government "failed to properly advise or inform [Cole] ... during his lifetime." Record at 5. We are bound by *Stanley* and therefore affirm the district court's dismissal of the original complaint.[7]

The plaintiffs' proposed amendment, however, seeks to avoid the pitfalls of *Stanley* by asserting the novel claim that the government's negligent failure to warn materialized *after* Cole's discharge when the government's knowledge concerning the hazards of radiation increased sufficiently to give rise to a new duty. According to the plaintiffs, this purely post-discharge act is separate from, rather than a continuation of, the negligence alleged in the original complaint.

The plaintiff's position that *Feres* permits this new theory of recovery alleged in their proposed amendment is not without legal support. In *Stanley,* we specifically distinguished the situation in which the negligent failure to warn occurred entirely after the injured serviceman's discharge. *Id.* at 1154. In Broudy v. United States, 722 F.2d 566 (9th Cir.1983) (*Broudy* II), the Court of Appeals for the Ninth Circuit considered an issue markedly similar to the one here. Like this case, *Broudy* involved in-service exposure to radiation. The court vacated the district court's dismissal of the plaintiff's action alleging that the government's negligent failure to warn occurred *after* the injured serviceman was discharged, because the government only obtained knowledge of the hazards of radiation after that date. *Id.* at 569-70; *see also* Gaspard, 713 F.2d at 1101 (In barring the plaintiff's claim the court noted that "[t]here is no allegation before us that knowledge increased to a point where a new duty to treat or warn was created."); Broudy v. United States, 661 F.2d 125, 128-29 (9th Cir.1981) (*Broudy* I). Moreover, several district courts confronted with allegations of post-discharge failures to warn have indicated that *Feres* does not apply. *See* Seveney v. United States, 550 F.Supp. 653 (D.R.I.1982); Everett v. United States, 492 F.Supp. 318 (S.D.Ohio 1980); 877*877 Thornwell v. United States, 471 F.Supp. 344 (D.D.C.1979).[8]

Our review of the law in this area suggests that in a case alleging a failure by the government to warn of in-service active-duty[9] exposure to hazardous substances, the crucial inquiry is whether the purported conduct of the government giving rise to the plaintiff's cause of action occurred while the injured party was still a member of the armed forces. *See, e.g.,* Heilman, 731 F.2d at 1107; *Broudy* II, 722 F.2d at 570; Gaspard, 713 F.2d at 1101; Lombard, 690 F.2d at 220; Stanley, 639 F.2d at 1154. Under this standard, the claim in the plaintiffs' proposed amendment would not be barred by the *Feres* doctrine. The relevant "injury" here is the aggravation or perpetuation of Cole's radiation-induced condition due to the government's failure to discharge its new duty to warn.[10] It is urged that the conduct by the United States causing this injury occurred entirely after he left the service.

Given the novelty of this case, we believe it necessary and instructive to examine the resulting decision in light of the considerations underlying the *Feres* doctrine.[11] The Supreme Court has identified four factors favoring the military exclusion rule: 1) the lack of parallel private liability, 2) the potentially adverse effects on military discipline, 3) the belief that because state law governs under the FTCA it would be irrational to base an injured serviceman's right to recover on the fortuitous geographical circumstance of where he happened to be stationed, and 4) the existence of the comprehensive Veteran's Benefits Act. *See generally* Chappell v. Wallace, 462 U.S. 296, 300-04, 103 S.Ct. 2362, 2365-67, 76 L.Ed.2d 586, 590-93 (1983); Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 671-73, 97 S.Ct. 2054, 2058-59, 52 L.Ed.2d 665, 670-72 (1977); Feres, 340 U.S. at 141-45, 71 S.Ct. at 157, 95 L.Ed. at 158-60.

The first factor is premised on the notion that the FTCA does not create new causes of action. *See* Chappell, 462 U.S. at 299, 103 S.Ct. at 2364, 76 L.Ed.2d at 590; United States v. Brown, 348 U.S. 110, 112-13, 75 S.Ct. 141, 143, 99 L.Ed. 139, 144 (1954); Feres, 340 U.S. at 141-42, 71 S.Ct. at 157, 95 L.Ed. at 158-59. A plaintiff cannot prevail in the event

state law precluded his right to recover if the United States was a private party. *See id.* It is apparent that the existence of parallel state liability is not a "factor" to be considered in determining whether an injury is "incident to service," but rather a separate prerequisite to the applicability of the FTCA.

This consideration does not control the outcome of this appeal. We treat this case in the context of a dismissal on the pleadings for lack of subject matter jurisdiction.[12] Consequently, it is only necessary that the complaint allege the basis in state law supporting the court's jurisdiction. *See* Fed.R.Civ.P. 8(a); *Doe v. Alexander,* 510 F.Supp. 900, 902 (D.Minn.1981) (FTCA claimant need only identify statute upon which substantive claim is based); 878*878 *Malone v. Hall,* 431 F.Supp. 999, 1001-02 (N.D.Ohio 1976) (dismissal of FTCA complaint affirmed when no allegation of negligence included), *affirmed,* 581 F.2d 582 (6th Cir.1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979). Here, the amendment adequately alleges that the negligent failure to warn would be contrary to Alabama law if the government was a private party. At this point it is not necessary to decide whether the government, if a private party, could be actually liable to the plaintiffs under the facts alleged; that issue is whether the complaint states a claim upon which relief can be granted, a question not yet addressed by the district court.[13]

We perceive the second and third considerations to be the underlying rationale for the Supreme Court's requirement that the injury be "incident to service." *See, e.g., Calhoun v. United States,* 475 F.Supp. 1, 3 (S.D.Cal.1977), *affirmed* 604 F.2d 647 (9th Cir.1979) (per curiam)*, cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980). The second element, the potential effect of *Feres* -type suits on military discipline, is generally felt to be the most important. *See Chappell,* 462 U.S. at 299, 103 S.Ct. at 2365, 76 L.Ed.2d at 590 (effect on discipline "best explains" *Feres* doctrine) (quoting *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 1857, 10 L.Ed.2d 805, 815 (1963)); *Brown v. United States,* 739 F.2d 362, 365 (8th Cir.1984) ("most compelling rationale"). "[N]o military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting." *Chappell,* 462 U.S. at 299, 103 S.Ct. at 2365, 76 L.Ed.2d at 590. "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers." *Id.,* 462 U.S. at 300, 103 S.Ct. at 2365, 76 L.Ed.2d at 591. This factor requires that courts consider the potential disruption resulting from permitting soldiers to hale their superiors into court, *id.,* 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.Ed.2d at 593, and requiring servicemen to second-guess military orders and to "testify in court as to each other's decisions and actions." *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059, 52 L.Ed.2d at 671. "[I]t is the need to avoid the *inquiry* into military orders, and not the consequences of the inquiry, that justifies the military exclusion from the FTCA." *Gaspard,* 713 F.2d at 1102 (emphasis in original).

We do not believe that the inclusion of the tort alleged in the plaintiff's proposed amendment will significantly affect military discipline. Litigating the claim will not involve any examination of military orders or practices affecting personnel on active duty. The investigation would be limited to the government's knowledge of the hazards of radiation exposure before and after

Cole's discharge and to its decision not to warn an already discharged veteran of these dangers. This is not the typical "continuing tort" case in which a probe of the government's decision not to warn a *serviceman* would be appropriate, a situation which would implicate the superior-soldier relationship.[14] Nor is this a case in which any of the government's orders or practices involving Cole, or any other serviceman, while on active duty would be judged in hindsight.

879*879 The situations anticipated in *Feres* are logically distinguishable. Litigating the issues in *Feres* would have involved investigating the military's quartering practices and methods of providing medical treatment for soldiers on active duty. Similarly, proving the allegations in *Stencel* and *Chappell* would have necessitated examination of military equipment schemes and promotion and assignment policies, respectively. Conversely, the only relevant questions here concern government policies towards veterans, an issue hardly implicating military discipline.

We recognize that probes into government decisions involving former servicemen may adversely affect future practices of the armed forces, particularly where, as here, the need for the decision arises out of the government's treatment of an active-duty serviceman. Nonetheless, we regard this danger as too remote to be accorded significant weight when the decision only indirectly involves military orders or practices concerning active duty soldiers. *Cf. In re "Agent Orange" Product Liability Litigation,* 580 F.Supp. 1242, 1250 (E.D.N.Y.1984) ("The fact that an officer might refrain from giving an order to the soldier because a civilian might ultimately sue the United States is so ephemeral and far-fetched that it is given no weight at all in determining the limits of *Feres.*"). In a case such as this the need to protect military discipline does not extend to dealings between the government and veterans.[15]

The third consideration is predicated on the belief that since state law serves as the source of substantive liability in FTCA cases, it is irrational to base a soldier's right to recover on the happenstance of his duty station. *Feres,* 340 U.S. at 143, 71 S.Ct. at 158, 95 L.Ed. at 159. This concern may be expanded to include the undesirability of forcing the government to adjust its conduct towards its servicemen according to geography. This apprehension should not be relevant here, because the alleged failure to warn occurred after discharge — the choice of law does not depend on where Cole was stationed when exposed to the radiation.[16] *See id.,* 340 U.S. at 142-43, 71 S.Ct. at 157-58, 95 L.Ed. at 159 (not unfair to base right to recover on place where veteran chooses to live).

The final determining element is the impact of the Veteran's Benefits Act (VBA). *See Chappell,* 462 U.S. at 299, 103 S.Ct. at 2365, 76 L.Ed.2d at 590; *Stencel,* 431 U.S. at 672-73, 97 S.Ct. at 2058-59, 52 L.Ed.2d at 671; *Feres,* 340 U.S. at 145, 71 S.Ct. at 159, 95 L.Ed. at 160. Precisely how this factor is to be treated is not entirely clear. In *Brown* and *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Supreme Court held that the *Feres* doctrine did not bar the plaintiffs' FTCA claims even though they were receiving veteran's benefits because their injuries were not incurred "incident to military service." Recently, however, the Supreme Court indicated that the VBA is an "exclusive" remedy, *see Stencel,* 431 U.S. at 673, 97 S.Ct. at 2058-59, 52 L.Ed.2d at

671; *see also* Hatzlachh Supply Co. v. United States, 444 U.S. 460, 464, 100 S.Ct. 647, 650, 62 L.Ed.2d 614, 618-19 (1980) (per curiam) (interpreting *Stencel*), despite the lack of a corresponding explicit indication of congressional intent and the fact that such a broad holding would overrule *Brown* and *Brooks.* In the most recent reading of this aspect of *Stencel,* however, 880*880 the Court in Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983), stated that *Stencel* relied "primarily on the military nature of the action" and "precluded the substantive claim *without* regard to any exclusive-liability provision." *Id.,* 460 U.S. at 197 n. 8, 103 S.Ct. at 1037 n. 8, 74 L.Ed.2d at 919 n. 8 (emphasis added).

In *Stencel,* unlike in *Brown* and *Brooks,* the injury was found to be "incident to military service." The VBA, therefore, is best regarded as an additional reason for barring a claim based on an injury which is already determined to be "incident to service," rather than a dispositive factor. The former Fifth Circuit Court of Appeals reached precisely this result in Parker v. United States, 611 F.2d 1007, 1012 (5th Cir.1980), in which it pointed out that the *Stencel* Court reasoned only that the VBA "provides an upper limit of liability for the Government as to *service-connected* injuries." Stencel, 431 U.S. at 673, 97 S.Ct. at 2059, 52 L.Ed.2d at 671 (emphasis added). *See also* Feres, 340 U.S. at 146, 71 S.Ct. at 159, 95 L.Ed. at 160-61 (distinguishing *Brooks* on the grounds that, although veteran's benefits were available, the claim there was not "incident to service"). Consequently, because our analysis of the second and third factors establishes that the injury alleged in the plaintiffs' proposed amended complaint was not "incident to service," the existence of the VBA does not bar the claim.

We conclude that the *Feres* doctrine does not preclude the cause of action pled in the plaintiffs' proposed amendment. Because the government's tortious conduct is alleged to have occurred after Cole was discharged, the resulting injury was not "incident to service" since there is no significant potential adverse effect on military discipline and no risk of undesirable and fortuitous applications of state law. There is a sufficient allegation of an analogous state right and the VBA does not preclude a recovery under these circumstances.[17] Accordingly, the district court erred in denying the plaintiffs' motion to amend.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED with instructions to grant the plaintiffs' motion to amend.

[1] The record does not disclose the date of Cole's discharge.

[2] The action was also brought under the Public Vessels Act, 46 U.S.C. §§ 781-790, which incorporates the Suits in Admiralty Act, 46 U.S.C. §§ 741-752.

[3] Count one of the complaint stated:

The Defendant knew or should have known, or subsequently discovered and fraudulently concealed, that Decedent's exposure, without Decedent's knowledge, to massive doses of dangerous radiation while performing the aforesaid duties while a member of the U.S. Navy, posed a great likelihood or possibility of his developing carcinoma subsequent to this exposure, but failed to properly advise or inform Decedent of this danger during his lifetime.

Record at 5. On appeal the plaintiffs do not challenge the district court's dismissal of a second cause of action for assault and battery.

[4] The new count alleged:

Subsequent to Decedent's exposure, and subsequent to Decedent's separation from the U.S. Navy, Defendant's knowledge of the harmful effects of radiation exposure expanded greatly to the point where a new duty to treat or warn the Decedent of the hazards of radiation arose. Notwithstanding Defendant's increased knowledge of the hazard to the Decedent and its duty to warn, the Defendant failed to properly advise or inform the Decedent of the hazard he incurred following his separation from military service.

Record at 11. In the second motion to amend, the plaintiffs merely clarified the two "failure to warn" claims without altering their substance. *Id.* at 13-15. Because this second amendment is not relevant to this appeal, we hold that the district court did not err in denying the motion to amend.

[5] We recently reviewed in detail *Feres* and its progeny in Johnson v. United States, 749 F.2d 1530 (11th Cir.1985), holding that the doctrine did not preclude a suit by the widow of a Coast Guard pilot against the United States alleging that the pilot's death was due to the negligence of civilian air traffic controllers. *Id.* at 1532-35. There is no need here to repeat that opinion's comprehensive summary of the evolution of the *Feres* doctrine.

[6] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

[7] Although we have no information in the record indicating when Cole was discharged, counsel for the plaintiffs conceded at oral argument that he remained in the service some time after he was exposed to radiation. On the basis of this representation we hold that the plaintiffs have waived the right to assert otherwise for the purpose of reviewing the dismissal of their original complaint.

We note that the *Feres* doctrine applies to the plaintiffs' claims based on the Public Vessels Act as it incorporates the Suits in Admiralty Act as well as the FTCA. *See* Hillier v. Southern Towing Co., 714 F.2d 714 (7th Cir.1983); Beaucoudray v. United States, 490 F.2d 86 (5th Cir.1974) (per curiam).

[8] We express no opinion whether the allegations in these cases were appropriately construed as true post-discharge torts.

[9] There is no necessity to decide the applicable standard for situations not involving active duty such as leave status, volunteer status or fraudulently obtained volunteer status.

[10] The amendment alleges only that Cole suffered "damages" due to the government's failure to warn. Construing the complaint liberally, as we must, *see* Fed.R.Civ.P. 8(f), we infer this characterization of the damages claim as a matter of logic.

[11] We do not imply that such a case-by-case analysis is required in all cases. In Johnson v. United States, 749 F.2d 1530, 1536 n. 6 (11th Cir.1985), the court reasoned that the case was sufficiently different from the usual *Feres*-type case to warrant this sort of an inquiry. Here, we are similarly presented with a novel *Feres* issue.

[12] Technically, in reviewing the plaintiffs' proposed amended complaint, we are determining whether the district court's denial of their first motion to amend, *see supra* note 4, was an abuse of discretion. The district court denied this motion solely on the grounds that the amended complaint was subject to a dismissal for lack of subject matter jurisdiction. *See* Record at 20. As a result, it is appropriate to consider the correctness of this conclusion.

[13] In reviewing a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b), a reviewing court must assume as true the "factual" allegations in the complaint. *See e.g.,* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974). Here, the plaintiffs' allegation that a duty to warn *exists* under state law is

the sort of contention we must assume to be true. We do not reach the question of whether there is a new duty to warn under the applicable state law. Not only are we in no position to determine the state whose law should govern, *see infra* note 16, but the actual existence of such a duty is not known at this time.

[14] It is irrelevant that the plaintiffs' proposed amendment alleges that some government knowledge of the hazards of radiation exposure existed during Cole's tenure of service even though the amendment suggests a failure to warn during the same period. The government's failure to warn during this span of time would not be germane to the present litigation.

[15] It is not difficult to imagine that there are dangers in extending unbridled protection to military decisionmaking. As the Court of Appeals for the Eighth Circuit observed in Brown v. United States, 739 F.2d 362, 369 (8th Cir.1984): "Indeed, the application of the *Feres* doctrine in a case such as this would insulate from liability the very breakdown of military discipline."

[16] The choice of law under the FTCA is governed by the place of the government's act or omission. 28 U.S.C. § 1346(b). Since the failure to warn is alleged to have occurred after discharge, the controlling law does not depend on Cole's station. In Broudy v. United States, 722 F.2d 566 (9th Cir.1983) (*Broudy II*), a case similarly involving an FTCA failure to warn after discharge, the court reasoned that the applicable state law was the place of the injured veteran's residence. *Id.* at 569 n. 1. On remand, it will be necessary for the district court to determine which state's law governs this case.

[17] Although we are aware of no differences between the application of *Feres* under the FTCA and the Public Vessels Act, *see* Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 197, 103 S.Ct. 1033, 1037, 74 L.Ed.2d 911, 919 (1983) (different acts irrelevant for *Feres* doctrine purposes), we point out that neither side has argued on appeal that such differences exist, *see* Brief of Appellee at 12 n. 5 (plaintiffs' reference to Public Vessels Act is "surplusage"), and have, therefore, waived any such positions.